**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

REUBEN ACOSTA,

        Plaintiff,

     v.                                                                      Civ. No. 24-641 KWR/KK

LEE DUDEK, Acting Commissioner
of the Social Security Administration,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]**

    Before the Court is Plaintiff Reuben Acosta's ("Claimant") Motion for Summary Judgment (Doc. 17) ("Motion"), filed October 14, 2024, in which Claimant appeals the denial of his claims for Supplemental Security Income and Disability Insurance Benefits and asks the Court to remand this matter to the Social Security Administration for further proceedings. (*Id.*) On January 13, 2025, the Commissioner filed a response to Claimant's Motion. (Doc. 22.) On February 24, 2025, Claimant filed a reply in support of his Motion. (Doc. 25.)

    Having meticulously reviewed the entire record and the relevant law, being otherwise sufficiently advised, and for the reasons set forth below, I find that Claimant's Motion is well-taken in part. Specifically, I agree with Claimant that the Commissioner's decision is not supported by substantial evidence and, therefore, must be reversed and remanded. However, I disagree with Claimant that an immediate partial award of benefits is an appropriate remedy in this case. I,

---

[1] By an Order of Reference (Doc. 12) entered on June 28, 2024, United States District Judge Kea W. Riggs referred this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.

therefore, recommend that the Motion be GRANTED IN PART and DENIED IN PART and that the Court reverse the Commissioner's decision denying benefits and remand this matter for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Claimant is a 51-year-old man from Farmington, New Mexico, who graduated from high school and completed some community college but never received a certificate or degree. (*See* AR[2] 43, 224.) He worked as a newspaper "Distribution Carrier" ("carrier") from 2010 until 2013. (*See* AR 46-47, 204-206.) In that position, he would drive six (6) hours a night, delivering newspapers to businesses and residences, frequently lifting 10-25 pounds of newspaper bundles and carrying them 10-40 feet. (*See* AR 217, 240.) In 2013, he became a "Distribution Manager" ("manager"[3]) for the newspaper company. (*See* AR 46, 206-209, 239.) In that role, he was "in charge of carriers throughout the Four Corners[,]" supervising 16 people. (*See* AR 46, 241.) In addition to duties such as payroll, hiring and firing employees, general supervision and management of carriers, and customer service, Claimant was required to "fill[] in for other carriers," which meant "driving almost every night" and continuing to frequently lift bundles of newspapers weighing 10-25 pounds. (AR 57, 241.) As a manager, Claimant lifted "quadruple" what he had to lift as a carrier. (AR 58.) He eventually returned to being "just strictly a carrier[,]"

---

[2] Citations to "AR" refer to the Certified Transcript of the Administrative Record filed on January 25, 2024. (Doc. 13.)

[3] In the Work History Report he completed, Claimant identified the title of this job as both "Distribution Manager" and "District Manager." (*See* AR 239 ("Distribution Manager"), 241 ("District Manager").) At his hearing, Claimant referred to himself as "a circulation manager[.]" (AR 49.) As explained below, the proper classification of Claimant's prior work—including whether he ever held the job of "Manager, Circulation (print. & pub.)" as defined by the *Dictionary of Occupational Titles* ("DOT")—is a central issue in this appeal. I, therefore, elect to refer to the position Claimant held when he became an employee of the newspaper company as simply "manager."

which paid more and required less lifting. (AR 46, 55, 58.) In February 2022, Claimant stopped working because he couldn't drive anymore due to numbness in his feet and weakness in his legs caused by his diabetic neuropathy and back spurs. (*See* AR 47-48, 49, 223.)

On July 5, 2022, Claimant, then age 48, filed for Disability Insurance Benefits ("DIB"), and on August 11, 2022, he filed for Supplemental Security Income ("SSI"). (*See* AR 172, 181.) He claimed a disability onset date of February 10, 2022, and an inability to work as of that date due to his medical conditions, comprising annual disc tears, peripheral neuropathy, Type II diabetes mellitus, broad based disc protrusion, bilateral neurofiraminal stenosis, hypothyroidism, hypertensive disorder, and back pain with radiculopathy. (*See* AR 174, 181, 223.)

Claimant's claims were denied at the initial level on August 29, 2022, (AR 97-101, 102-106), and at the reconsideration level on May 8, 2023. (AR 110-13, 114-17.) Claimant requested a hearing, which Administrative Law Judge ("ALJ") Michelle Lindsay conducted on January 9, 2024. (AR 38-60.) On February 7, 2024, the ALJ issued her decision finding that Claimant was not disabled under the relevant sections of the Social Security Act. (AR 18-37.) On April 19, 2024, the Appeals Council denied Claimant's request for review, (AR 1-6), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Claimant now seeks reversal and remand of the ALJ's determination that he is not disabled. (*See* Docs. 1, 17.)

## THE ALJ DECISION

The ALJ reviewed Claimant's claim pursuant to the five-step sequential evaluation process.[4] (*See* AR 22-23.) First, the ALJ found that Claimant had not engaged in substantial gainful

---

[4] The five-step sequential evaluation process requires the ALJ to determine whether:

> (1) the claimant engaged in substantial gainful activity during the alleged period of disability;

activity during the relevant period for his claim. (AR 24.) The ALJ found at step two that Claimant

suffers from the severe impairments of diabetes mellitus with peripheral neuropathy, chronic pain

syndrome, degenerative disc disease of the lumbar spine, obstructive sleep apnea, morbid obesity,

and gastroesophageal reflux disease. (AR 24-25.) She also found that Claimant has "adjustment

disorder with mixed emotional features," a condition that she found to be non-severe. (AR 24-25.)

At step three, the ALJ concluded that Claimant did not have an impairment or combination of

impairments that met or medically equaled the criteria of listed impairments under 20 C.F.R. Part

404, Subpart P, Appendix 1. (AR 25-27).

At step four, which is comprised of three phases[5], the ALJ first found that Claimant has the

following residual functional capacity ("RFC")[6]:

> [C]laimant has the residual functional capacity to perform *sedentary* work as
> defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is able to lift,
> carry, push, and pull ten pounds on an occasional basis. He can sit for at least 6
> hours in an 8-hour workday and stand and walk for 2 hours in an 8-hour workday.
> He requires the use of a single point cane for walking. He can occasionally climb
> stairs and ramps, but can never climb ladders, ropes, or scaffolds. He can

---

(2) the claimant has a severe physical or mental impairment (or combination of
    impairments) that meets the duration requirement;

(3) any such impairment meets or equals the severity of an impairment listed in
    Appendix 1 of 20 C.F.R. Part 404, Subpart P;

(4) the claimant can return to her past relevant work; and, if not,

(5) the claimant is able to perform other work in the national economy, considering
    her RFC, age, education, and work experience.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th
Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the burden
of proof in the first four steps of the analysis, and the Commissioner has the burden of proof at
step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). A finding that the claimant is
disabled or not disabled at any point in the process is conclusive and terminates the analysis. *Casias
v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

[5] *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).

[6] A person's residual functional capacity is "the most [the person] can still do" despite physical
and/or mental limitations caused by the person's impairment(s). 20 C.F.R. §§ 404.1545(a)(1),
416.945(a)(1).

occasionally balance, stoop, crouch, kneel, and crawl. He must avoid more than occasional exposure to extreme cold and to vibration. He must completely avoid unprotected heights and hazardous moving machinery.

(AR 27 (emphasis added).) Next, and with the assistance a vocational expert ("VE"), the ALJ made findings regarding Claimant's past relevant work ("PRW"), including that Claimant's PRW included, as relevant here, "circulation manager," which the VE testified is a "sedentary" job. (*See* AR 31, 54-55.) At the final phase of step four, the ALJ found that Claimant—whom she had found retained the RFC to perform "sedentary work" (AR 27)—"can return to his past relevant work as a circulation manager, as generally performed." (AR 32.) The ALJ thus concluded that Claimant is not disabled. (*See* AR 32.)

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the

record[,]" *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).

"The failure to apply the correct legal standard or to provide this [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks and brackets omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

## DISCUSSION

Claimant argues that reversal and remand are required for either of two reasons: (1) because the ALJ's finding that his PRW includes the "sedentary" job of "circulation manager"—a job to which the ALJ found Claimant can "return"—is not supported by substantial evidence; and/or (2) because the ALJ committed legal error in failing to account for Claimant's concentration limitations in assessing his RFC. (*See* Doc. 17-1.) Claimant further argues that, should the Court agree that remand is required because the ALJ erred in finding that he could return to his past work, the Court should remand for an immediate award of benefits for the six-month period of time before Claimant "became an individual closely approaching advanced age" (i.e., the six months before he turned 50), while "remanding the case for further consideration of whether

6

[Claimant] was disabled between his alleged onset date of February 10, 2022, and the awarded benefits date." (*Id.* at 13-14.)

I agree with Claimant that the ALJ's determinations about his PRW—including her conclusion that he is not disabled because he can return to his prior work—is not supported by substantial evidence and that remand is, therefore, required. However, I do not agree that an immediate partial award of benefits is an appropriate remedy. Rather, because I find that additional fact-finding would serve a useful purpose, I recommend that the Court remand this case for further proceedings. Regarding Claimant's second claim of error—that the ALJ failed to include, or explain why she wasn't including, any mental limitations in the RFC she assessed despite finding that Claimant has mild limitations in concentration, persistence, or maintaining pace—I agree that remand is required on that basis as well.

I.     **The ALJ's Finding That Claimant's PRW Includes the "Sedentary" Job of "Circulation Manager" is Not Supported by Substantial Evidence.**

At step four, the ALJ found that Claimant retains the RFC to perform "sedentary work[.]" (AR 27.) Relying on the testimony of the VE, she found that Claimant's PRW included the following three jobs as defined in the Dictionary of Occupational Titles ("DOT"): (1) "Circulation manager," a "sedentary" job; (2) "Newspaper carrier," a "light" exertion job; and (3) "Automobile parts salesperson," also a "light" exertion job. (*See* AR 31, 55, 57.) Having found that Claimant is still able to perform sedentary work, and having found that Claimant previously performed the "sedentary" job of "circulation manager," the ALJ concluded that Claimant is not disabled because he can "return to his past relevant work as a circulation manager[.]" (AR 31-32.)

Claimant challenges the ALJ's classification of his PRW, specifically her findings that his PRW included "two distinct jobs" of "newspaper carrier" and, separately, "circulation manager." (Doc. 17-1 at 9-12.) According to Claimant, neither job classification, on its own, accurately

reflects what his day-to-day responsibilities were or, critically, the physical demands of the work he did. (*Id.* at 10-11.) Although he concedes that he "did have managerial responsibilities" and that it would "make sense to include [the circulation manager] job as part of a composite job," he argues that the ALJ erred by concluding that any of his PRW included a true "sedentary" job to which he can "return." (Doc. 17-1 at 11-12; AR 32.) He contends that the ALJ's findings regarding his PRW are not supported by substantial evidence, requiring reversal and remand. (*See* Doc. 17-1 at 1, 9-12.) I agree.

### A. Applicable Law

"Step four of the sequential analysis . . . is comprised of three phases." *Winfrey*, 92 F.3d at 1023. "In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity . . ., and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work." *Id.* "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id.* At each phase of the step-four analysis, the ALJ must make specific findings to ensure "meaningful judicial review." *Id.* at 1025.

At phase two, specifically, the ALJ "must determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "Past work experience must be considered carefully to assure that the available facts support a conclusion regarding the claimant's ability or inability to perform the functional activities required in [his or her past] work." SSR 82-62[7], 1982 WL 31386, at * 3 (Jan. 1, 1982). "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically

---

[7] Effective June 22, 2024, SSR 82-62 was rescinded and replaced by SSR 24-2P. The ALJ's decision in this case was issued on February 7, 2024, prior to the rescission and replacement of SSR 82-62.

established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62). "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands[,] and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at * 3.

"The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." *Id.* "The rationale for a disability decision must be written so that a clear picture of the case can be obtained. The rationale must follow an orderly pattern and show clearly how specific evidence leads to a conclusion." *Id.* at *4. "[T]he determination or decision *must contain* among the findings" a "specific" finding of fact "as to the physical and mental demands of the past job/occupation." *Id.* (emphasis added). Where the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, [the Court is] left with nothing to review." *Winfrey*, 92 F.3d at 1025.

**B.  The Evidence Regarding the Physical Demands of Claimant's PRW**

The evidence regarding the requirements and physical demands of Claimant's PRW came from two sources: the Work History Reports that Claimant completed, and Claimant's hearing testimony. *See Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("Social Security Regulations name two sources of information that may be used to define a claimant's past relevant work as actually performed: a properly completed vocational report, . . . and the claimant's own testimony[.]" (citations omitted)). In relevant part, that evidence indicated that Claimant's responsibilities as a "manager" at the newspaper included not only administrative "office work" (e.g., customer service, payroll, hiring and firing employees) but also activities requiring that he

handle, grab, or grasp "big objects" for up to four (4) hours a day (i.e., frequently[8]). (AR 241.) Specifically, Claimant reported that his work as a manager included lifting and carrying "[b]undles of newspapers, machines, and files[,]" "frequently" having to lift 10-25 pounds, and needing to be able to lift 100 pounds or more on at least some occasions. (AR 241.)

At Claimant's hearing—after the VE testified that she would classify his past work as including the "sedentary" job of "circulation manager"—Claimant explained that "[t]he job of manager at the newspaper requires filling in for other carriers, filling in for the dock watch person, . . . [who] stacks bundles of newspapers, up to 200 bundles." (AR 57.) He further explained that the "manager spot" requires "driving almost every night, new deliveries, meeting with people. There's a lot more to the manager than just being able to sit, you know, as that was my job." (AR 57; *see also* AR 58 (Claimant describing his manager job as "a driving job").) Asked by the ALJ how much he had to lift in that position, Claimant explained that it was "quadruple" what carriers had to lift—which was around 15 bundles of newspapers, each weighing 10-to-12 pounds— because he "would have to fill in for other people" who "didn't show up." (AR 58.) He further testified that when he filled in for the dock watch, which "was always going down[,]" he was required to "transfer bundles coming out the window, stacking them for the carriers to be there." (AR 58.) Summing it up, Claimant stated that it was "easier as a carrier"—a job that the VE testified is classified at the "light" exertional level—which is the position to which he eventually returned. (AR 58; *see* AR 31, 46, 55.)

**C.  The ALJ's Findings Regarding Claimant's PRW**

---

[8] *See* AR 241 ("By frequently, we mean from 1/3 to 2/3 of the workday."); *see also* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983) ("'Frequent' means occurring from one-third to two-thirds of the time.").

The ALJ found, in relevant part, that Claimant's PRW included "circulation manager." (AR 31.) The question I must answer is whether substantial evidence supports that finding. For the reasons that follow, I conclude that it does not.

The Dictionary of Occupational Titles ("DOT") describes the job of "Manager, Circulation (print. & pub.)"[9] as follows:

> Directs sale and distribution of newspapers, books, and periodicals. Directs staffing, training, and performance evaluations to develop and control sales and distribution program. Establishes geographical areas of responsibility for subordinates to coordinate sales and distribution activities. May be designated according to type of circulation activity managed as Manager, Newspaper Circulation (print. & pub.); or area served as Manager, City Circulation (print. & pub.).

DOT 163.167-014, 1991 WL 647310. "Circulation manager" is classified as "Sedentary work," meaning the strength requirements of the job include:

> Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

*Id.*; *see* 20 C.F.R. §§ 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."), 416.967(a) (same). Notably, circulation managers must be able to engage in high-level reasoning, such as being able to "[a]pply

---

[9] The VE testified that Claimant's PRW includes "circulation manager, 163.167-014" (AR 55), which is the DOT occupational code for "Manager, Circulation (print. & pub.)."

principles of logic or scientific thinking to define problems, collect data, establish facts, and draw

valid conclusions"; "[i]nterpret an extensive variety of technical instructions in mathematic or

diagrammatic form"; and/or "[d]evelop abstract and concrete variables." DOT 163.167-014, 1991

WL 647310. Consistent with the classification of the job as "sedentary," the work of circulation

managers involves no climbing, balancing, stooping, kneeling, crouching, or crawling; only

occasional reaching, handling, and fingering; a "low degree of aptitude ability" in motor

coordination, finger dexterity, and manual dexterity; and a "markedly low aptitude ability" in eye-

hand-foot coordination. *Id.*

The only basis the ALJ cited in support of her determination that Claimant's prior work fits

within the DOT's occupational category of "circulation manager" is the VE's testimony that

Claimant's PRW included that job. (*See* AR 31.) The ALJ made no findings regarding either (a) the

physical demands of Claimant's manager job, or (b) the substantive work that Claimant did in that

job, despite the existence in the record of evidence as to both issues.

The Commissioner argues that the ALJ was entitled to rely on the VE's testimony about

how to classify Claimant's PRW and that the VE's opinion that Claimant's PRW is properly

classified under the DOT's "circulation manager" job title is substantial evidence that supports the

ALJ's decision. (Doc. 22 at 8-9, 11-12.) Claimant argues that the VE's descriptions of his PRW

are simply "wrong" and that the ALJ's failure to address and reconcile apparent conflicts between

the VE's opinion, on the one hand, that Claimant's PRW included the "sedentary" work of being a

"circulation manager" and his testimony, on the other, that the work he did was not sedentary

requires reversal and remand. (Doc. 17-1 at 11-12.)

The Commissioner is correct that an ALJ may rely upon testimony from a VE in making

the necessary step-four findings; however, the "VE's role in supplying information at step four is

much more limited than his role at step five, where he is called upon to give his expert opinion about the claimant's ability to perform [other] work in the national economy." *Winfrey*, 92 F.3d at 1025. "Therefore, while the ALJ may rely on information supplied by the VE at step four, the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform his past relevant work." *Id.* Additionally, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009–10. Where the ALJ "makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, [the Court is] left with nothing to review." *Winfrey*, 92 F.3d at 1025.

Here, the VE did not explain, and the ALJ did not elicit testimony from the VE regarding, the basis for her opinion that Claimant's PRW is properly classified under the DOT's "circulation manager" job title, even after Claimant expressly challenged that opinion. In her opening testimony, the VE testified, in conclusory fashion, that she would classify Claimant's PRW as including "circulation manager." (AR 55.) After the ALJ presented the VE with the physical limitations that she assessed Claimant as having, the VE opined that a person with those limitations would still be able to perform the job of "circulation manager," a job the VE testified is classified in the DOT as "sedentary[.]" (AR 55, 56.) Asked by the ALJ whether the job of "circulation manager" could be performed with the use of a single-point cane for walking[10], the VE confirmed

---

[10] The ALJ found that Claimant "has used a cane since 2021 for ambulation which was prescribed by his medical provider." (AR 28.) Claimant testified that he "always" uses his cane when he walks and reported that he uses a cane "every time" he walks, including when moving around inside his home. (*See* AR 44, 257, 262.)

that it could. (AR 56.) In response to a question from the ALJ regarding whether a person who needed to "alternate" between sitting and standing positions could still perform the job of "circulation manager," the VE explained that the job of "circulation manager" is "truly a sedentary, sit-down job" that "would not be able to be done in a standing position." (AR 57.)

At that point in the hearing, Claimant objected to the VE's classification of his PRW as including a "sedentary" position. As described above, he offered unrebutted testimony that his "manager" job required quadruple the amount of lifting that was required as a carrier (a "light" exertional job). Specifically, Claimant explained that the "dock watch was always going down" and that, as the "manager," he was required to "fill in" for the "dock watch person" who was responsible for stacking and transferring up to 200 bundles of newspapers weighing 10-12 pounds each. (AR 57-58.) He further explained that he was responsible for "filling in" for carriers and ended up "driving almost every night[.]" (AR 57.) Despite Claimant's supplemental testimony and objection to the VE's characterization of his "manager" work as "sedentary" and to her classification of that job under the DOT's "circulation manager" job title, the ALJ sought no further testimony from the VE on that issue. (*See* AR 58-60.)

On the record before me, I cannot say that the ALJ's finding that Claimant's PRW includes "circulation manager" is supported by substantial evidence. The only evidence the ALJ cited that supports that finding is the VE's testimony. However, whatever assessment the VE undertook to arrive at her conclusion that Claimant's PRW could properly be classified under the DOT's "circulation manager" job title took place in her head, leaving me with nothing to review. *See Winfrey*, 92 F.3d at 1025.

The ALJ's failure to probe the basis for the VE's opinion is particularly problematic, here, given Claimant's testimony—and the other evidence of record—calling into question the

14

characterization of his manager job as "sedentary." Sedentary jobs involve "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a); 416.967(a). However, the unrebutted evidence in this case indicates that Claimant frequently lifted more than 10 pounds (all the way up to 25 pounds) and could be required to lift up to 100 pounds in his manager job. (AR 58, 241.) Circulation managers only occasionally have to handle objects. *See* DOT 163.167-014, 1991 WL 647310. However, here, Claimant reported that he frequently handled not only small objects but also big objects as a manager. (AR 241.) For circulation managers, the activities of stooping and crouching are "[n]ot [p]resent," meaning those activities "do[] not exist" in that job. DOT 163.167-014, 1991 WL 647310. Here, Claimant—who testified that his responsibilities as manager included transferring and stacking bundles of newspapers—reported that he spent two (2) hours a day stooping and one (1) hour a day crouching. (AR 57, 58.) The ALJ failed not only to cite evidence supporting a finding that Claimant's PRW is properly characterized as "circulation manager" but also to explain how evidence that is plainly inconsistent with that finding was considered and resolved.

Notably, the ALJ appears to have fully credited Claimant's Work History Reports and testimony regarding the physical demands of his job, which supported a finding that Claimant's manager job involved "medium" exertional work. *See* 20 C.F.R. § 404.1567(c) (defining "Medium work" as involving "frequent lifting or carrying of objects weighing up to 25 pounds"); 20 C.F.R. § 416.967(c) (same). The ALJ, in fact, found that Claimant "[a]ctually [p]erformed" his manager job at the "Medium" exertional level. (*See* AR 31.) Yet, for reasons I cannot follow and the ALJ failed to explain, the ALJ concluded that Claimant's PRW included the "sedentary" job of "circulation manager."

In addition to the ALJ's failures to make findings regarding the physical demands of Claimant's PWR and to explain what evidence supports a finding that Claimant's PRW included any "sedentary" type of work, the ALJ's decision also fails to identify substantial evidence that supports a finding that Claimant ever engaged in the type of work that "circulation managers" do. The drafters of that job category envisaged that one who is a "circulation manager" is involved in both "sale and distribution" and, indeed, is responsible for "direct[ing]" activities relating to the newspaper's "sales and distribution program." DOT 163.167-014, 1991 WL 647310. Neither Claimant's Work History Reports nor his testimony suggested that he was at all involved in, much less directed, sales; directed staffing, training, and performance evaluations to develop and control sales; and/or established geographical areas of responsibility of his subordinates. By all indications—and setting aside titles—Claimant's substantive work as a "manager" involved supervising and supporting the activities of newspaper carriers, a job he previously did and eventually returned to. While true that carriers are involved in the "distribution" of newspapers, the job of "circulation manager" is not limited to supervision of distribution-related activities. To support a finding that Claimant's PRW included "circulation manager," there must be evidence indicating that Claimant, in fact, previously performed the type of work performed by "circulation managers." *See* SSR 82-62, 1982 WL 31386, at *1 ("The term 'work experience' means skills and abilities acquired through work previously performed by the individual which indicates the type of work the individual may be expected to perform. Work for which the individual has demonstrated a capability is the best indicator of the kind of work the individual can be expected to do."); *cf. Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051-52 (10th Cir. 1993) (explaining that "a claimant may overcome the presumption that the *Dictionary*'s entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not

those envisaged by the drafters of the category" (quotation marks and citation omitted)). I fail to

see—and the VE and ALJ failed to identify—what evidence supports such a finding in this case.

Because the ALJ's threshold finding that Claimant's PRW includes the "sedentary" job of

"circulation manager" is not supported by substantial evidence, her derivative finding that

Claimant is not disabled because he can "return" to his work as a "circulation manager" is also not

supported by substantial evidence. Reversal and remand are, therefore, required.

### D. The Appropriate Remedy

Claimant argues that if the Court finds that the ALJ erred in her determinations about his

PRW, the Court should remand for an immediate award of benefits as of September 25, 2023, the

date Claimant argues he met the Administration's "borderline age policy" under which he contends

he should have been found eligible for benefits. (Doc. 17-1 at 14.) Claimant concedes that remand

for further proceedings is the appropriate remedy with respect to the period of time between his

alleged onset date of February 10, 2022, and September 25, 2023. (*Id.*) For the reasons that follow,

I find that Claimant is not entitled to an immediate award of benefits.

The Tenth Circuit has explained that "[w]hen a decision of the Secretary is reversed on

appeal, it is within the court's discretion to remand either for further administrative proceedings or

for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). In

deciding whether to remand for an immediate award of benefits, one of the "relevant factors"

courts consider is whether "remand for additional fact-finding would serve any useful purpose[.]"

*Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). "Whether or not to award benefits is a

matter of [the court's] discretion." *Id.* (brackets, quotation marks, and citations omitted).

Here, I cannot say that remand for additional fact-finding would serve no useful purpose.

Indeed, additional fact-finding—and perhaps even further development of the record—is essential

to making determinations about Claimant's disability claims. The proper classification of Claimant's PRW—a critical threshold determination with far-reaching implications—is an inherently fact-intensive undertaking, requiring determinations by the ALJ in the first instance of, *inter alia*, the physical demands of Claimant's PRW and the type of work in which Claimant was engaged. *See generally* SSR 82-62, 1982 WL 31386. Notably, the Social Security Administration recognizes that "[t]here may be cases involving significant variations between a claimant's description and the description shown in the DOT." SSR 82-61, 1982 WL 31387, at *2 (Aug. 20, 1980). In such cases, "[e]mployer contact or further contact with the claimant[] may be necessary to resolve such a conflict." *Id.* Additionally, in cases involving "significant elements of two or more jobs"—i.e., "composite jobs," which is what Claimant contends his manager job was (*see* Doc. 17-1 at 9-13)—the determination of whether a claimant can perform his past relevant work must "be evaluated according to the particular facts" of that case.[11] *Id.* It is squarely within the purview of the ALJ—not this Court—to undertake such evaluations and make necessary factual findings.

Claimant's arguments regarding why remand for additional fact-finding would not serve any useful purpose are unavailing. Claimant first argues that "remand without a partial award of benefits would frustrate [his] eligibility for benefits under the borderline age rule that he would

---

[11] Although I find that the record fails to support the ALJ's conclusion that Claimant's PRW included "circulation manager," I do not—and cannot—make any affirmative findings regarding the proper classification of Claimant's PRW, including whether it should be characterized as a "composite job." Notably, Claimant, himself, is neither firm nor clear about which two (or more) jobs purportedly comprise his "composite job." In his opening brief, Claimant appears to argue that the applicable DOT job titles are (1) newspaper-delivery driver (DOT 292.363-010, 1991 WL 672568), and (2) circulation manager. (*See* Doc. 17-1 at 11.) In his reply brief, Claimant additionally argues that his manager job included "the job of a dockworker." (Doc. 25 at 2.) Whether Claimant's manager job included "significant elements" of any of these, and/or other, jobs must be resolved by the ALJ in the first instance on remand.

have otherwise been entitled to[.]" (Doc. 17-1 at 15.) Initially, and as the Commissioner points out, the borderline age rule only applies in situations where the ALJ concludes that the claimant cannot perform his or her PRW and is making a step-five determination regarding whether the claimant is able to adjust to other work. *See* POMS DI 25015.006(C). Here, the ALJ never reached step five of the sequential evaluation process, and as Claimant concedes, the borderline age rule applies only "*if* [he] could not perform his past relevant work[.]" (Doc. 17-1 at 13 (emphasis added).) My conclusion that the ALJ's step-four determinations regarding Claimant's ability to return to his PRW are not supported by substantial evidence does not necessarily require the ALJ to find, on remand, that Claimant is unable to return to his prior work or to proceed to step five. Moreover, even if the ALJ determines, on remand, that Claimant is unable to return to his PRW (or has no PRW for the relevant period), such a determination does not necessarily render applicable the borderline age rule or dictate a finding of disability. While the Medical-Vocational Guidelines recognize that an individual "approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work[,]" whether or not the individual is ultimately determined to be disabled depends on a number of factors, including whether he has past work experience, whether can no longer perform PRW, and whether he has any transferrable skills. 20 C.F.R. Pt. 404, Subp. P, App'x 2, § 201.00(g). The record contains no applicable findings on these issues because the ALJ did not engage in a step-five analysis. I, therefore, cannot say that remand for additional fact-finding would serve no useful purpose.

Claimant alternatively argues that "there is no possible way for an ALJ to conclude now that [Claimant] could perform past relevant work because the work at issue would be outside of the relevant period[.]" (Doc. 17-1 at 15.) In support of this argument, Claimant cites the Social

Security Program Operations Manual System[12] ("POMS") DI § 25005.15(B), which provides that "[g]enerally, to be relevant, the claimant's past work must have been performed within the five years prior to the date of adjudication[.]" (Doc. 17-1 at 13.) According to Claimant, "[h]is earnings records prove that he was last employed by [the newspaper company] in 2018, he had no income in 2019, and he only made about $3,000 in 2020 in self-employment income." (Doc. 17-1 at 13.) He contends that this demonstrates that he "did not perform any substantial gainful activity" during the relevant time period and that further fact-finding is, therefore, unnecessary to support an award of benefits. (Doc. 17-1 at 13-14.) I disagree.

As the Commissioner points out, the policy cited by Claimant was not in effect when the ALJ issued her decision in February 2024. At the time of adjudication, the applicable law provided that "work experience applies when it was done within the last 15 years[.]" 20 C.F.R. § 404.1565(a) (effective Aug. 24, 2012, to June. 21, 2024); *see* SSR 82-62, 1982 WL 31386, at *2 (citing 20 C.F.R. § 404.1565(a) and explaining that "work performed 15 years or more prior to the time of adjudication of the claim . . . is ordinarily not considered relevant"); *see also* SSR 24-2P, 2024 WL 3291790, at *1 (rescinding, *inter alia*, SSR 82-62, effective June 22, 2024). Although Claimant points out that his earnings records tend to suggest that he had not engaged in substantial gainful activity since as early as 2019, the ALJ made no findings regarding Claimant's work activity between 2019 and February 10, 2022, the date Claimant alleged as his onset of disability and when the ALJ found Claimant was no longer engaged in substantial gainful activity. Remanding for additional fact-finding, thus, serves the useful purpose of allowing the ALJ to consider Claimant's

---

[12] The Tenth Circuit has explained that "[t]he POMS is a set of policies issued by the Social Security Administration to be used in processing claims. This court defers to the POMS provisions unless we determine they are arbitrary, capricious, or contrary to law." *Anders v. Berryhill*, 688 F. App'x 514, 521 (10th Cir. 2017) (cleaned up).

arguments under the new policy, apply the revised policy to the facts of Claimant's case, and make necessary determinations, in the first instance, regarding whether Claimant has any past relevant work under the new policy.

Because I find that additional fact-finding not only would be useful but also is necessary, an immediate award of benefits is not appropriate. I recommend remanding this case for further administrative proceedings.

## II.    The ALJ Committed Reversible Error in Assessing Claimant's RFC.

As an independent basis for reversal, Claimant argues that the ALJ committed reversible error by failing to account for the "mild limitation" in concentration that she found at step two of the sequential evaluation process. (Doc. 17-1 at 15-17.) In her step-two discussion, the ALJ acknowledged that Claimant alleged that his impairments "cause problems with memory, task completion and concentration [.]" (AR 25.) She specifically cited Claimant's function report, in which Claimant reported that his "pain meds . . . cause the need for repeating" spoken instructions for him to be able to follow them. (AR 278.) In that same report, Claimant indicated that his medications cause him to feel "foggy/drowsy" and "tired." (AR 280.) At his hearing, Claimant testified that his medication makes him "really, really sleepy, really drowsy" and that if he needs to go somewhere, he has to decide whether to take his medication and be drowsy or not take it so he can remain alert. (AR 50.) In explaining why he could no longer do the manager job—which he described as a "driving job"—he testified that he "can't drive" because his medication makes him sleepy. (AR 58.)

In her step-two findings, the ALJ found, with respect to the mental functional area of "concentrating, persisting, or maintaining pace," that "claimant has mild limitation." (AR 25.) At Claimant's hearing, the ALJ asked the VE whether a person who is "likely to be off task 20 percent

of the day due to side effects of medication" would be able to perform any of the jobs the VE had identified in response to a hypothetical RFC posed by the ALJ. (AR 58-59.) Yet, in assessing Claimant's RFC at step four, the ALJ included no mental functional limitations. (*See* AR 27.)

Claimant argues that the ALJ's failure to include any mental limitations in his RFC—or to explain her reasons for not including any limitations—constitutes reversible error. (*See* Doc. 17-1 at 15-17.) While the ALJ was not necessarily required to include mental limitations in the RFC she assessed, I agree that reversal and remand are required because her decision fails to explain her reasons for including no such limitations.

"The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]" SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary setting on a regular basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* The ALJ's decision must contain "a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms[,]" and must "[s]et forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.* "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017).

Here, the ALJ's RFC narrative includes no discussion of the evidence regarding Claimant's alleged symptoms caused by his medications, including drowsiness, sleepiness, and difficulty

remembering instructions. (*See* AR 27-31.) Nor did the ALJ identify what evidence supports her apparent conclusion that Claimant's symptoms have no impact on his ability to perform sustained work activities. Particularly given the evidence regarding the side effects of Claimant's medications and the ALJ's findings that (a) Claimant has a "mild limitation" in concentration, and (b) Claimant can return to his past work as a circulation manager—a job that Claimant described as a "driving job"—it was imperative that the ALJ set forth a logical explanation, with citations to medical and other evidence, supporting that conclusion. On remand, the ALJ must take care to comply with the applicable legal standards for assessing Claimant's RFC and must clearly articulate how the evidence supports each of her conclusions.

### CONCLUSION

For the reasons explained herein, I recommend that Claimant's Motion (Doc. 17) be GRANTED IN PART, and that the Commissioner's decision denying Claimant's disability claims be REVERSED and this matter REMANDED to the Commissioner for further proceedings in accordance with this PFRD.

**Timely objections may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition that party may, pursuant to Section 636(b)(1)(C), file written objections to such proposed findings and recommended disposition with the Clerk of the United States District Court for the District of New Mexico. A party must file any objections within the fourteen-day period allowed if that party wants appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE

23